[No. B014077. Second Dist., Div. Four. Jan. 17, 1986.]

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,
Petitioner, v.
PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent;
AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL
EMPLOYEES, AFL-CIO, Real Party in Interest.

COUNSEL

Donald L. Reidhaar, James N. Odle and Edward M. Opton, Jr., for Petitioner.

Jeffrey Sloan and Michael Terris for Respondent.

No appearance for Real Party in Interest.

OPINION

KINGSLEY, Acting P. J.—This case arises under the Higher Education Employer-Employee Relations Act (HEERA or Act), Government Code section 3560 et seq., a statute enacted to govern labor relations between public higher education employers and employee organizations. The Public Employment Relations Board (PERB or Board) is the administrative body in charge of enforcing this Act.

The Regents of the University of California (University or Petitioner or U.C.), by petition for writ of extraordinary relief, seeks relief from decision 504-H of respondent PERB. PERB's decision and order requires that the real party in interest, American Federation of State, County and Municipal Employees (hereinafter AFSCME or the Union) be allowed reasonable access to certain banner space located at the intersection of LeConte Avenue and Westwood Boulevard at UCLA. The Board held U.C. violated section 3571, subdivisions (a) and (b) of the Act by unreasonably denying AFL-CIO (AFSCME) access to the aforementioned banner space.

FACTS

AFSCME was one of several employee organizations competing to become the exclusive representative union for various collective bargaining units. AFSCME distributed leaflets on campus; it advertised in the campus newspapers, on commercial television, and circulated two newspapers of its own. It had tables inside and outside of buildings and it gave away coffee and doughnuts. It held small and large group meetings in various University buildings and the large auditorium in Royce Hall was available for meetings. AFSCME had rallies on University lawns, it attached posters to bulletin boards, some of which were designated for such use and others not. It used amplified sound on campus, it purchased a mailing list of voters from the University and the University advised the Union that a more up-to-date list could be purchased. AFSCME also publicized itself with AFSCME T-shirts, hats, buttons and balloons.

AFSCME also had a large banner reading, "Win a Stronger Voice in Your Future, Vote AFSCME." AFSCME requested the University Inter-organizational Relations Office for permission to display the banner across the main entrance to UCLA at Westwood Boulevard near LeConte Avenue.

Use of banner space is regulated by University's published "Services and Facilities Regulations." These regulations distinguished between communications made at the University and by the University, and there is one set of regulations governing the banners advertising official University functions, while another set of regulations governs the posting of banners by the University student government or by registered organizations. Two locations are provided for student government and registered organization banners, and only banners advertising official University functions may be displayed at other locations. The Westwood-LeConte location is one of two other such locations. The Westwood-LeConte banner space is uniquely prominent and consists of two permanently installed poles flanked by stone walls to which are affixed plaques inscribed "UCLA."

Over the years there were 14 requests for banner use at that location. Eleven were for official University functions, all nonemployment related, and three were for nonofficial functions. These three nonofficial functions were an announcement of Gay and Lesbian Awareness Week by UCLA Gay and Lesbian Alliance, an announcement of a Bike-A-Thon for Ataxia by a fraternity, and a message from the Israel Act Committee, which may have been a Hebrew New Year Greeting. The requests for these three nonofficial banners were granted in error and were granted contrary to the University regulations.

Robert Ringler approved AFSCME's banner application. Gregory Kramp, manager of employee relations, informed Mr. Ringler that he was concerned about an unfair labor practice charge and also about the Regents' unionization policy, which was to not support or endorse unionization. Mr. Kramp also informed Mr. James Klain, the director of the campus activities services office, of his concerns. Mr. Klain did not allow the banner because it did not meet the guidelines as an official University event. AFSCME displayed its banner in two other locations, one for two weeks, and the other for one week, during the three-week period in which the election was held. These two locations are prominent and close to the main entrance and are controlled by the City of Los Angeles.

In the proceedings below, AFSCME charged a violation of section 3568 of the Government Code. The administrative law judge issued a decision in favor of AFSCME, the University proposed exceptions, and the three member PERB panel ruled in favor of AFSCME two-to-one and issued three separate opinions. U.C. argued that the Board misconstrued section 3568, and that the Board erred in holding that U.C. acted unreasonably in denying access to the LeConte-Westwood location.

Petitioner argues that a petitioner's writ of review is the appropriate method to appeal a decision of PERB. Government Code section 3564, subdivisions (b) and (c) read as follows:

"(b) Any charging party, respondent, or intervenor aggrieved by a final decision or order of the board in an unfair practice case, except a decision of the board not to issue a complaint in such a case may petition for a writ of extraordinary relief from such decision or order.

"(c) Such petition shall be filed in the district court of appeal in the appellate district where the unit determination or unfair practice dispute occurred. The petition shall be filed within 30 days after issuance of the board's final order, order denying reconsideration, or order joining in the request for judicial review, as applicable. Upon the filing of such petition, the court shall cause notice to be served upon the board and thereupon shall have jurisdiction of the proceeding. The board shall file in the court the record of the proceeding, certified by the board, within 10 days after the clerk's notice unless such time is extended by the court for good cause shown. The court shall have jurisdiction to grant to the board such temporary relief or restraining order [as] it deems just and proper and in like manner to make and enter a decree enforcing, modifying, or setting aside the order of the board. The findings of the board with respect to questions of fact, including ultimate facts, if supported by substantial evidence on the

record considered as a whole, are conclusive. The provisions of Title 1 (commencing with Section 1067) of Part 3 of the Code of Civil Procedure relating to writs shall, except where specifically superseded herein, apply to proceedings pursuant to this section."

It is clear that under Government Code section 3564 petitioner properly sought judicial review of the decision of the PERB by writ to this court.

It is also clear that under section 3564, subdivision (c) the "findings of the board with respect to questions of fact, including ultimate facts, if supported by substantial evidence on the record considered as a whole, are conclusive." ■ Also, the rule is that "[u]nder established principles, PERB's construction is to be regarded with deference by a court performing the judicial functions of statutory construction, and will generally be followed unless it is clearly erroneous." (*San Mateo City School Dist.* v. *Public Employment Relations Bd.* (1983) 33 Cal.3d 850, 856 [191 Cal.Rptr. 800, 663 P.2d 523].) Therefore, we will regard PERB's construction of section 3568 with the appropriate deference, and will accept the Board's findings of fact as conclusive if supported by substantial evidence.

■ Petitioner's argument that the Board misconstrued section 3568 is without merit.

Section 3568 reads as follows: "Subject to reasonable regulations, employee organizations shall have the right of access at reasonable times to areas in which employees work, the right to use institutional bulletin boards, mailboxes and other means of communication, and the right to use institutional facilities at reasonable times for the purpose of meetings concerned with the exercise of the rights guaranteed by this act."

Petitioner argues that the Board erred in statutory construction, and improperly interpreted the phrase "other means of communication" to mean "any and all other means of communication."

First of all, as we have said above, the Board's construction shall be regarded with deference, under the rule of *San Mateo, supra*. Secondly, the Board specifically said the University could reserve certain forms of communication for official documents, so the Board could not have construed the phrase to mean all other forms of communication. Finally, petitioner is not correct that the Board would have had to construe "other means of communication" to mean "all other means of communication" to reach the

result it reached. Under the rules of statutory construction the Board would not have needed to interpret "other means of communication," to mean "*any* and *all* other means of communication." ■ The rule is if the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history. (*Rich* v. *State Board of Optometry* (1965) 235 Cal.App.2d 591, 604 [45 Cal.Rptr. 512].) ■ However, the Board herein need not have added to or altered the actual statutory language by inserting the words "any and all" in order to achieve the interpretation the Board did accept. ■ The courts are bound to give effect to statutes according to the usual ordinary import of the language employed in framing them. (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [110 Cal.Rptr. 144, 514 P.2d 1224]; *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) ■ The ordinary import of the language of the statute at bar, "other means of communication," could lead the Board to conclude that the banner space at LeConte and Westwood is *an* "other means of communication." The Board need not alter the statutory language of section 3568 by adding on the phrase, "any and all" to conclude that the words "other means of communication" mean that the particular official banner space in question was *an* other means of communication. Therefore, the Board has not violated a rule of statutory construction.

However, even though the statutory language uses the phrase "other means of communication," and clearly the particular banner spaces qualify as *an* "other means of communication," it is true that the above statutory language could be subject to more than one interpretation. The language could also be interpreted to mean that: (1) *every other* means of communication should be available to the Union for access; or (2) the above language could mean that although "*other* means of communication" should be available, "each" and "every" other means of communication need not necessarily be made available to the Union. ■ Where statutory language is susceptible to more than one interpretation, reasonable interpretations are to be favored over unreasonable interpretations. (*Barber* v. *Blue* (1966) 65 Cal.2d 185, 188 [52 Cal.Rptr. 865, 417 P.2d 401].) ■ It is unreasonable to assume the Legislature intended that the University could reserve no forms of communication for official University communications only, and that the University would have to provide to the Union access to *every* other means of communication.

Since the Board stated that the statutory language did not preclude the University from reserving some space to itself, the Board never made an unreasonable interpretation. The Board specifically said the University

could reserve certain space for its own official communications. We regard the Board's interpretation with deference, *San Mateo, supra,* 33 Cal.3d 850, and thus there was no error.

Furthermore, the statutory phrase "subject to reasonable regulation," which was added to the beginning of the section, Assembly Bill No. 1091 (1977-1978 Reg. Sess., art. 4, § 3568, amends. 40-41 to Assem. Bill No. 1091 (1977-1978 Reg. Sess., August 7, 1978, 7 Sen. J. (1977-1978 Reg. Sess.) at p. 13047)), is consistent with the interpretation that the University could make reasonable regulations on banner use. An interpretation of section 3568, which would grant unions unlimited access to all forms of communication, including those few places for communication that the University has attempted to reserve for official University communication, would ignore the language permitting reasonable regulations by the University. However, since the Board found that the University would be entitled to reserve space for its official communication, the Board did not disregard the language in question.

■ Nevertheless, we think the Board erred in its ultimate decision.

Section 3571, subdivision (d) and section 3571.3[1] prohibit the employer from expressing a preference for one union over another. If U.C. had permitted AFSCME to use its official banner space for AFSCME banner, and other competing unions do not also use that space, that conduct by the University would violate the code sections which make it unlawful for the University to encourage employees to join "any organization in preference to another. . . ."

The fact that competing unions were not interested in using the banner space and only AFSCME wished to use the space, is not here relevant. The statute clearly says that the University may not show a preference to one union over another. An employee union is not in any position to negate the

---

[1]Section 3571, subdivision (d) and section 3571.3 read as follows: "It shall be unlawful for the higher education employer to: . . . [¶] "(d) *Dominate or interfere with the formation or administration of any employee organization, or contribute financial or other support to it, or in any way encourage employees to join any organization in preference to another;* provided, however, that subject to rules and regulations adopted by the board pursuant to Section 3563, an employer shall not be prohibited from permitting employees to engage in meeting and conferring or consulting during working hours without loss of pay or benefits." [¶] § 3571.3. "The expression of any views, arguments, or opinions, or the dissemination thereof, whether in written, printed, graphic, or visual form, shall not constitute, or be evidence of, an unfair labor practice under any provision of this chapter, unless such expression contains a threat of reprisal, force, or promise of benefit; provided, however, that the employer shall not *express a preference for one employee organization over another employee organization."* (Italics added.)

clear prescripts of the statute by the signing of a release or a waiver. The University is precluded by the statutory language from showing a preference, whether or not the other unions object to whether the University shows a preference toward one particular union.

Nor can it be successfully argued that the use of official banner space by one union is not the expression of a preference. The use of official banner space advertising a particular union could certainly create an inference that the University is endorsing that particular union in preference to other unions, in violation of the unambiguous statutory language.

The Union argues that because on three occasions the University permitted three nonofficial organizations to post banners, the University has lost the right to reserve the banner space for official communications only. Respondent argues that the University is arbitrarily and discriminatorily enforcing its regulations by restricting access to the banner space against the Union, and that the University may not act arbitrarily and discriminatorily.

Petitioner responds by stating that a few exceptions to the University rules on official space do not mean that the University is acting arbitrarily or discriminatorily in applying the rules.

First of all, it may be true that a certain number of exceptions to a rule do not necessarily show that the rule is being applied in an improper discriminatory manner. (See *Serv-Air, Inc.* v. *N.L.R.B.* (10th Cir. 1968) 395 F.2d 557.) However, this does not necessarily aid petitioner's cause. The Board found that the University acted arbitrarily. We are required to accept the Board's findings of fact and ultimate fact as true if supported by substantial evidence. But whether we view the Board's decision that the University acted arbitrarily and discriminatorily as a mixed question of law and fact, such that we are not bound by the Board's findings, or we view the Board's decision as a factual one not supported by substantial evidence, the University acted properly in denying the Union herein the use of banner space that appeared to be official space and that was designated in the regulations as official space. The above statutes clearly state the University may *not express a preference* for one organization over another. The particular space is designated as an official space and is between two permanent poles flanked by stone walls with plaques inscribed "UCLA," certainly giving the appearance of an official University space. To allow a particular union to use that space would give the appearance that the University is endorsing that particular union over another union, in violation of the provisions of sections 3571, subdivision (d) and 3571.3. The University's con-

duct in violating its own regulations by permitting three *non*union, unofficial organizations use of the official space, however improper, does not mean that the University may now also violate sections 3571, subdivision (d) and 3571.3 by showing preference to one employee union over another union. Whether or not the University should lose its right to keep the space for official communications is not the pertinent question here. The pertinent question here is whether or not the University is expressing a preference in violation of the above statutes. So long as the University and others regard the space as official space, and the space appears to be an official space, use of a Union banner in that space would be a prohibited expression of a preference by the University in favor of one union over the other.

The Board's order is set aside.

McClosky, J., and Luke, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.