TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 94-501 |
| of | : | |
| | : | August 31, 1994 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| ANTHONY S. Da VIGO | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE K. MAURICE JOHANNESSEN, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

Where a school district has included an abstinence-based sex education program as part of its prescribed curriculum, may a classroom teacher decline to present the program material on the basis of an "academic freedom" clause contained in the school district's collective bargaining agreement with its teachers?

CONCLUSION

Where a school district has included an abstinence-based sex education program as part of its prescribed curriculum, a classroom teacher may not decline to present the program material on the basis of an "academic freedom" clause contained in the school district's collective bargaining agreement with its teachers.

ANALYSIS

Every school district in California is under the control of a board of school trustees or a board of education. (Ed. Code, § 35010, subd. (a).)[1] For purposes of this discourse, the term

_____

[1]Except as otherwise designated, unidentified section references are to the Education Code.

"governing board" refers to a board of education of a city, county, or district which has the duty to prescribe the course of study for the schools within its jurisdiction. (§ 51017.) The course of study for elementary, middle, or high school must be "prescribed and enforced" by, or "prepared under the direction" of, the governing board having control thereof. (§§ 51053, 51054; see also § 51210, subd. (h); § 51220, subd. (k).)

We are asked to consider whether a school teacher may decline, based on an "academic freedom" clause in the school district's collective bargaining agreement, to present an abstinence-based sex education program which the governing board has prescribed as part of the curriculum. We conclude that such a provision, to the extent that it may be so interpreted, would be unauthorized and void.[2]

Under the Education Employment Relations Act (Gov. Code, §§ 3540-3549.3; "EERA"), public school employees have the right to form, join, and participate in the activities of employee organizations of their own choosing for the purpose of representation on all matters of employer-employee relations. (Gov. Code, § 3543.) Government Code Section 3543.2, subdivision (a) provides as follows:

> "The scope of representation shall be limited to matters relating to wages, hours of employment, and other terms and conditions of employment. `Terms and conditions of employment' mean health and welfare benefits as defined by Section 53200, leave, transfer and reassignment policies, safety conditions of employment, class size, procedures to be used for the evaluation of employees, organizational security pursuant to Section 3546, procedures for processing grievances pursuant to Sections 3548.5, 3548.6, 3548.7, and 3548.8, the layoff of probationary certificated school employees, pursuant to Section 44959.5 of the Education Code, and alternative compensation or benefits for employees adversely affected by pension limitations pursuant to Section 22515 of the Education Code, to the extent deemed reasonable and without violating the intent and purposes of Section 415 of the Internal Revenue Code. In addition, the exclusive representative of certificated personnel has the right to consult on the definition of educational objectives, the determination of the content of courses and curriculum, and the selection of textbooks to the extent such matters are within the discretion of the public school employer under the law. All matters not specifically enumerated are reserved to the public school employer and may not be a subject of meeting and negotiating, provided that nothing herein may be construed to limit the right of the public school employer to consult with any employees or employee organization on any matter outside the scope of representation."

The EERA "distributes potential subjects among three statutory categories (subject to negotiation, subject to mandatory consultation and reserved to management)." (See *San Mateo City*

---

[2]We make no attempt to examine a teacher's refusal based upon any ground other than the "academic freedom" clause of the collective bargaining agreement. Since we are concerned only with the refusal to teach, no issue respecting exemption from attendance (cf. §§ 51240, 51550) is presented.

*School District* v. *Public Employment Relations Board* (1983) 33 Cal.3d 850, 858-859.)  Government Code section 3543.2, subdivision (a) expressly provides that certificated employees have "the right to consult on the definition of educational objectives, [and] the determination of the content of courses and curriculum . . . ."  With respect thereto, the court in *San Mateo City School District* v. *Public Employment Relations Board, supra*, 33 Cal.3d 850, stated:

> "Under the EERA the `definition of educational objectives, the determination of the content of courses and curriculum . . . ' are matters on which the exclusive representative has only the right to consult.  `All matters not specifically enumerated are reserved to the public school employer and may not be a subject of meeting and negotiating . . .' under the current law."  (*Id*., at p. 862.)

Similarly, the court in *Cumero* v. *Public Employment Relations Board* (1989) 49 Cal.3d 575, 591, stated:

> "The Education Code also directly affects the representative's right to `consult' on educational objectives, curriculum, and textbooks because that right is expressly limited to consultation on matters within the discretion of the school district (§ 3543.2) and the scope of that discretion is controlled by numerous provisions of the code.  (See, e.g., Ed. Code, §§ 51000 et seq. [general instruction programs], 60000 et seq. [instructional materials and testing].)"

To the extent that a clause or provision in a collective bargaining agreement purports to confer upon teachers collectively or an individual teacher unilaterally the right to determine the content of courses and curriculum, it would lack the authority of law.  An agreement made without authority of law in force at the time it is executed is void.  (*Pacific Inter-Club Yacht Association* v. *Richards* (1961) 192 Cal.App.2d 616, 619; 63 Ops.Cal.Atty.Gen. 633, 638 (1980).)

In addition, it is apparent that abstinence-based sex education is the subject of established legislative policy.  In this regard, section 51553 specifically provides:

> "(a)  All elementary, junior high, and senior high school classes that teach sex education and discuss sexual intercourse shall emphasize that abstinence from sexual intercourse is the only protection that is 100 percent effective against unwanted teenage pregnancy, sexually transmitted diseases, and acquired immune deficiency syndrome (AIDS) when transmitted      sexually. . . .

> "(b)  All sex education courses that discuss sexual intercourse shall satisfy the following criteria:

> "(1)  Course material and instruction shall be age appropriate.

> "(2)  Course instruction and material shall stress that abstinence is the only contraceptive method which is 100 percent effective, and that all other methods of contraception carry a risk of failure in preventing unwanted teenage pregnancy. . . .

"................................................

"(5) Course material and instruction shall stress that pupils should abstain from sexual intercourse until they are ready for marriage.

".................................................."

Section 51229 additionally provides:

"(a) The Legislature hereby finds and declares all of the following:

"(1) That abstinence is the only completely effective method of preventing pregnancy, acquired immune deficiency syndrome (AIDS), and other sexually transmitted diseases.

"(2) That existing law does not provide for either specific instruction or instructional materials in the curriculum to address the issue of abstinence from sexual intercourse, exclusive from other sexual behavior.

"(b) The Superintendent of Public Instruction shall contract with an organization to develop a video tape and supplementary materials that would teach abstinence from sexual activity.

"(c) Schools electing to use this video tape may use it within the context of comprehensive health education programs.

"(d) The video tape and supplementary materials shall . . . do all of the following:

"................................................

"(6) Discuss the topic of abstinence and encourage teens to take responsibility and make ethical and reasoned decisions in the prevention of teen pregnancy . . . .

".................................................."

Other related statutory provisions include section 8902, subdivision (b)(5) [abstinence as prevention for pregnancy] and 51201.5, subdivision (b)(3) [abstinence as prevention for AIDS].

In our view, this statutory language "clearly evidences an intent to set an inflexible standard or insure immutable provisions" so as to preclude negotiability on the subject. (See *San Mateo City School District* v. *Public Employment Relations Board, supra*, 33 Cal.3d at 864-865.) Hence, where provisions of the Education Code are mandatory, as are these (e.g., § 51553, subd. (a), *supra*), a contract proposal which would alter the statutory scheme, or replace, set aside, or annul any

such provision, is nonnegotiable. (See *San Mateo City School District* v. *Public Employment Relations Board, supra*, 33 Cal.3d at 866.)

Finally, while the concept of academic freedom may derive as an adjunct of free speech, it is not an independent First Amendment right which may be extrapolated to deny schools command of their own courses. (*Bishop* v. *Aronov* (11th Cir. 1991) 926 F.2d 1066, 1075.) We find no judicial precedent for the notion that a secondary school teacher has a constitutional right to academic freedom. (*Miles* v. *Denver Public Schools* (10th Cir. 1991) 944 F.2d 773, 779; cf. *Ward* v. *Hickey* (1st Cir. 1993) 996 F.2d 448; *Bradley* v. *Pittsburgh Board of Education* (3d Cir. 1990) 910 F.2d 1172; *Kirkland* v. *Northside Independent School District* (5th Cir. 1989) 890 F.2d 794; 77 Ops.Cal.Atty.Gen. 56, 60-61 (1994).)

It is concluded that where a school district has included an abstinence-based sex education program as part of its prescribed curriculum, a classroom teacher may not decline to present the program material on the basis of an "academic freedom" clause contained in the school district's collective bargaining agreement with its teachers.

\* \* \* \* \*