[Civ. No. 54414. First Dist., Div. One. Feb. 17, 1983.]

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,
Petitioner, v.
PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent;
WILLIAM H. WILSON et al., Real Parties in Interest.

1038

---

Donald L. Reidhaar, James N. Odle and Susan M. Thomas for Petitioner.

Dennis M. Sullivan, Jeffrey Sloan and Elaine B. Feingold for Respondent.

Andrew Thomas Sinclair for Real Parties in Interest.

OPINION

RACANELLI, P. J.—We granted a writ of review to consider the propriety of an order issued by the Public Employment Relations Board (PERB) compelling the employer, the Regents of the University of California (University), to grant an employee organization access to the University's internal mail service. For the reasons discussed below, we remand for findings on a remaining material factual issue.

FACTS

In 1979, William H. Wilson and Local 371 of the American Federation of State, County and Municipal Employees filed an unfair labor practice charge against the University before the PERB asserting that the University's refusal to permit the union to distribute organizational literature to the University's custodial employees through the intercampus mail system violated the rights guaranteed to employee organizations and employees under the provisions of the Higher Education Employer-Employee Relations Act (HEERA), reproduced in relevant part in the margin.[1]

The charge arose against the following background: The University maintains two operational units for its mail system at Berkeley. Mail collection and delivery for the Berkeley campus, nearby University state-wide offices and intercampus mail for the northern California campuses and laboratories are handled by the Harmon Gym facility at Berkeley. There, the outgoing mail is separated into three groups: (1) prestamped mail; (2) internal University mail for northern California; and (3) other mail.

The prestamped mail is delivered immediately to the United States Postal Service (U.S.P.S.) without further handling by the University. Internal Univer-

---

[1]The statutes provide in pertinent part:

Government Code section 3568: "Subject to reasonable regulations, employee organizations shall have the right of access at reasonable times to areas in which employees work, the right to use institutional bulletin boards, mailboxes and other means of communication, and the right to use institutional facilities at reasonable times for the purpose of meetings concerned with the exercise of the rights guaranteed by this act."

Government Code section 3571: "It shall be unlawful for the higher education employer to:

"(a) Impose or threaten to impose reprisals on employees, to discriminate or threaten to discriminate against employees, or otherwise to interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by this chapter.

"(b) Deny to employee organizations rights guaranteed to them by this chapter."

sity mail is monitored to assure that only official business mail is involved. This nonposted mail is then sorted and delivered.

Other mail is then taken to a second unit, denoted "2000 Carleton." These pieces are rated, affixed with United States postage and delivered to the U.S.P.S. Senders are recharged by office or department at regular postage rates plus 25 percent.

Incoming mail to the University from the U.S.P.S. is handled in one of two ways: mail addressed to any of some 50 sites on the Berkeley campus is delivered to the site by the U.S.P.S.; other United States mail, not so addressed, is delivered to Harmon Gym where delivery is completed by University employees.

In summary, the only mail accepted for delivery within the University's internal mail system is either posted mail which comes to Harmon Gym from the U.S.P.S. or official University business mail. The University has adopted regulations which deny use of its internal mail system to non-University organizations or for political, commercial or social purposes. Employee organizations are expressly prohibited from using the internal mail service. Pursuant to these regulations, the University has refused to deliver mail tendered by the union relating to its organizational activities unless the mail is stamped and sent through the U.S.P.S. It is that refusal which forms the basis of the union's unfair practice charge.

After a hearing, the PERB hearing officer issued a written decision in favor of the union. Upon the University's appeal to the board, the PERB essentially affirmed the hearing officer's decision and ordered the University to allow free access to the intercampus mail system.[2] The University then petitioned for review of the order.

I

Section 3568 of the Government Code grants to employee organizations the "right to use institutional bulletin boards, *mailboxes* and other means of com-

---

[2]The order in relevant part provided: "it is found that the University of California at Berkeley has violated subsections 3571(a) and (b) of the Higher Education Employer-Employee Relations Act by denying the American Federation of State, County and Municipal Employees, Local 371, access to the University's internal mail system at the Berkeley campus. It is hereby ORDERED that the University and its representatives shall:
"(1) CEASE AND DESIST FROM:
"(a) Denying employee organizations access to its internal mail system for the purpose of communicating with employees;
"(b) Interfering with employees' rights to participate in employee organization affairs by receiving communications from such organizations."

munication . . ." (italics added), the exercise of which is expressly "[s]ubject to reasonable regulations."

The University's regulations prohibit the use of the University's internal mail system by non-University groups or for nonbusiness purposes and, as previously mentioned, expressly deny access to employee organizations. These regulations were promulgated by the University in an effort to comply with federal postal laws and regulations, which, in effect, prohibit private conveyance of mail over any established U.S.P.S. route. (18 U.S.C. §§ 1693-1699, 1724; 39 U.S.C. §§ 601-606; 39 C.F.R. §§ 310, 320.)[3] An advisory opinion rendered by the assistant general counsel of U.S.P.S. concludes that "Carriage by the University in its internal mail distribution system of the letters of a union seeking to represent the University's custodial employees, without payment of postage, is prohibited by the [federal] Private Express Statutes." Of course, such an official interpretation by the federal agency itself, while not controlling, is entitled to great deference. (*Udall* v. *Tallman* (1965) 380 U.S. 1 [13 L.Ed.2d 616, 85 S.Ct. 792]; see also *Wilkinson* v. *Workers' Comp. Appeals Bd.* (1975) 19 Cal.3d 491, 501 [138 Cal.Rptr. 696, 564 P.2d 848].)

■ The University's chief complaint is that PERB failed to consider the Hobsonian choice confronting the University: if it were to grant the union access to its internal mail system under the union's interpretation of the HEERA provisions, it runs the risk of violating federal postal laws. With implicit reliance upon article III, section 3.5[4] of the California Constitution, the hearing officer as well as the PERB concluded that the latter was powerless to resolve the apparent conflict between the HEERA provisions and the federal postal laws and regulations. The recently enacted constitutional proviso, adopted by the electorate in apparent response to the majority holding in *Southern Pac. Transportation Co.* v. *Public Utilities Com.* (1976) 18 Cal.3d 308 [134 Cal. Rptr. 189, 556 P.2d 289] (see Ballot Pamp. arguments, Prop. 5, Primary

---

[3]The few exceptions listed under the regulations include: (1) letters properly stamped (39 U.S.C. § 601; 39 C.F.R. § 310.2(b)); (2) letters carried by the same person sending or receiving them (or an employee) (39 C.F.R. § 310.3(b)); (3) where the carriage is without compensation (39 C.F.R. § 310.3(c)); or (4) the carriage is by a university in its internal mail system of letters of bona fide faculty or student organizations (39 C.F.R. § 320.4).

[4]Article III, section 3.5, added by the voters in 1978, provides: "An administrative agency, including an administrative agency created by the Constitution or an initiative statute, has no power:

"(a) To declare a statute unenforceable, or refuse to enforce a statute, on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is unconstitutional;

"(b) To declare a statute unconstitutional;

"(c) *To declare a statute unenforceable, or to refuse to enforce a statute* on the basis that *federal law or federal regulations prohibit the enforcement of such statute* unless an appellate court has made a determination that the enforcement of such statute is prohibited by federal law or federal regulations." (Italics added.)

Elec. (June 1978) explicitly precludes any administrative agency (which by definition includes the PERB) from declaring a statute unenforceable or refusing to enforce a statute on grounds of federal prohibition in the absence of a reviewing court's antecedent determination. (See generally *Goldin* v. *Public Utilities Commission* (1979) 23 Cal.3d 638, 669, fn. 18 [153 Cal.Rptr. 802, 592 P.2d 289]; see also *Lewis-Westco & Co.* v. *Alcoholic Bev. etc. Appeals Bd.* (1982) 136 Cal.App.3d 829, 840, fn. 12 [186 Cal.Rptr. 552]; *Fenske* v. *Board of Administration* (1980) 103 Cal.App.3d 590, 595 [163 Cal.Rptr. 182].) In view of such constitutional compulsion, we agree that the PERB properly declined to decide the question whether the claimed statutory right to use the internal mail system is unenforceable by reason of preemptive federal postal law. Unquestionably, that decision rests solely within the province of the judiciary (*Fenske* v. *Board of Administration, supra,* at p. 595) and in this instance within the jurisdiction of an appellate court. (Cal. Const., art. III, § 3.5, subd. (c).)

But because we believe a threshold issue remains to be decided, i.e., whether the state statute (Gov. Code, § 3568) and the federal postal laws and regulations can be harmonized, the unsettled question of conflicting legislation is presented prematurely and consequently need not now be reached. As noted, the right granted under HEERA to use institutional mailboxes for union purposes is subject to "reasonable regulations." (Gov. Code, § 3568.) Thus, a factual issue remains to be decided by the PERB, namely: whether the University's regulations denying union access to the internal mail system are reasonable in light of all the surrounding circumstances, including federal postal requirements.[5] However, we find nothing in the language of article III, section 3.5 which prevents the PERB from *consulting* federal law in order to determine whether the state statute may be enforced without offending relevant federal regulations. An administrative agency still remains free to *interpret* the existing law in the course of discharging its statutory duties. (See *Goldin* v. *Public Utilities Commission, supra,* 23 Cal.3d 638, 669, fn. 18; cf. *McLean Trucking Co.* v. *U.S.* (1944) 321 U.S. 67, 79-80 [88 L.Ed. 544, 552-553, 64 S.Ct. 370].) Therefore, we remand the matter to the PERB for a determination of the reasonableness of the University's regulations.[6]

---

[5]In making that determination, the PERB may properly consider circumstances emphasized in this writ proceeding but yet to be evaluated: e.g., the University's use of its mail system to disseminate an employee newsletter expressing management's views on labor-management issues; the University's distribution of literature through the internal mail system soliciting charitable contributions deemed official business under the auspices of the chancellor; the *union's access to other means of communicating with custodial employees;* the burden which would be placed on the University's internal mail system.

[6]Finally, the union's request that we take judicial notice of a related but different grievance proceeding filed with respect to the Livermore Laboratory must be and is denied.

The order below is vacated and the matter is remanded for further proceedings consistent with the views expressed herein.

Elkington, J., and Newsom, J., concurred.

On March 8, 1983, the opinion was modified to read as printed above.