[No. A029706. First Dist., Div. One. June 9, 1986.]

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,
Petitioner, v.
PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent;
WILLIAM H. WILSON et al., Real Parties in Interest.

72

## COUNSEL

Donald L. Reidhaar, James E. Holst, James N. Odle, Susan M. Thomas and Edward M. Opton, Jr., for Petitioner.

Charles D. Hawley as Amicus Curiae on behalf of Petitioner.

Dennis M. Sullivan, Jeffrey Sloan and Andrea L. Biren for Respondent.

Andrew Thomas Sinclair for Real Parties in Interest.

## OPINION

**RACANELLI, P. J.**—For the second time we have granted a writ of review to consider the propriety of an order issued by the Public Employment Relations Board (PERB) compelling the employer, the University of California (University,) to grant an employee organization access to the University's internal mail service.

In *Regents of University of California* v. *Public Employment Relations Board* (1983) 139 Cal.App.3d 1037 [189 Cal.Rptr. 298], we set forth the salient facts in this dispute at pages 1039 and 1040 and reiterate them here for convenience: "In 1979, William H. Wilson and Local 371 of the Amer-

ican Federation of State, County and Municipal Employees filed an unfair labor practice charge against the University before the PERB asserting that the University's refusal to permit the union to distribute organizational literature to the University's custodial employees through the intercampus mail system violated the rights guaranteed to employee organizations and employees under the provisions of the Higher Education Employer-Employee Relations Act (HEERA), reproduced in relevant part in the margin.[1]

"The charge arose against the following background: The University maintains two operational units for its mail system at Berkeley. Mail collection and delivery for the Berkeley campus, nearby University state-wide offices and intercampus mail for the northern California campuses and laboratories are handled by the Harmon Gym facility at Berkeley. There, the outgoing mail is separated into three groups: (1) prestamped mail; (2) internal University mail for northern California; and (3) other mail.

"The prestamped mail is delivered immediately to the United States Postal Service (U.S.P.S.) without further handling by the University. Internal University mail is monitored to assure that only official business mail is involved. This nonposted mail is then sorted and delivered.

"Other mail is then taken to a second unit, denoted '2000 Carleton.' These pieces are rated, affixed with United States postage and delivered to the U.S.P.S. Senders are recharged by office or department at regular postage rates plus 25 percent.

"Incoming mail to the University from the U.S.P.S. is handled in one of two ways: mail addressed to any of some 50 sites on the Berkeley campus is delivered to the site by the U.S.P.S.; other United States mail, not so addressed, is delivered to Harmon Gym where delivery is completed by University employees.

---

[1]The statutes provide in pertinent part: Government Code section 3568: [¶] "Subject to reasonable regulations, employee organizations shall have the right of access at reasonable times to areas in which employees work, the right to use institutional bulletin boards, mailboxes and other means of communication, and the right to use institutional facilities at reasonable times for the purpose of meetings concerned with the exercise of the rights guaranteed by this act."

Government Code section 3571: "It shall be unlawful for the higher education employer to: (a) Impose or threaten to impose reprisals on employees, to discriminate or threaten to discriminate against employees, or otherwise to interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by this chapter. [¶] (b) Deny to employee organizations rights guaranteed to them by this chapter."

"In summary, the only mail accepted for delivery within the University's internal mail system is either posted mail which comes to Harmon Gym from the U.S.P.S. or official University business mail. The University has adopted regulations which deny use of its internal mail system to non-University organizations or for political, commercial or social purposes. Employee organizations are expressly prohibited from using the internal mail service. Pursuant to these regulations, the University has refused to deliver mail tendered by the union relating to its organizational activities unless the mail is stamped and sent through the U.S.P.S. It is that refusal which forms the basis of the union's unfair practice charge."

Based on a solicited advisory opinion from the U.S.P.S., the University took the position that carriage by the University in its internal mail distribution system of the letters of a union seeking to represent the University's custodial employees, without payment of postage, is prohibited by the Private Express Statutes. (18 U.S.C. §§ 1693-1699, 1724; 39 U.S.C. §§ 601-606.)[2]

After an appropriate hearing and administrative appeal the PERB ordered the University to allow free access to the intercampus mail system. Thereafter, we granted University's petition for a writ of review. Upon considering the University's challenge to the PERB order, we concluded that certain preliminary factual issues needed to be determined before a ruling on the order could be made. Accordingly, we remanded the matter for a determination whether the University's regulations denying union access to the internal mail system were reasonable in light of all the surrounding circumstances, including federal postal requirements. In reaching its determination, we suggested that the PERB consider (1) the University's distribution of literature through the internal mail system to disseminate an employee newsletter expressing management's views on labor-management issues; (2) the University's distribution of literature through the internal mail system soliciting charitable contributions deemed official business under the auspices of the chancellor; (3) the union's access to other means of communicating with custodial employees; and (4) the burden which would be placed on the University's internal mail system if access were provided. Most importantly, we stated that the PERB was free to consult federal law in order to determine whether the state statute may be enforced without offending federal postal regulations. (*Regents of University of California* v.

---

[2]Additionally, 18 United States Code section 1693 provides: "Whoever, being concerned in carrying the mail, collects, receives, or carries any letter or packet, contrary to law, shall be fined not more than $50 or imprisoned not more than thirty days, or both."

*Public Employment Relations Bd., supra,* 139 Cal.App.3d at p. 1042 and fn. 5.)

After a subsequent evidentiary hearing and administrative appeal, the PERB found that: (1) articles and newsletters disseminated to employees by the University via the University mail system do include management positions on issues pertinent to employer-employee relations; (2) on at least three occasions the University has allowed use of the internal mail system by nonemployee organizations; (3) the union is not required to use an alternative means of communicating with employees where, as here, the University has made no showing that permitting employee organizations to have access to the internal mail system will disrupt the functioning of the University (see Richmond Unified School District (1979) 3 PERC p. 10105) and (4) there was no convincing evidence that permitting an employee organization to have access to the internal mail system would create any additional financial burden on the University. Regarding the crucial issue concerning a potential conflict with U.S. postal regulations, the PERB determined that the University's delivery of union communications falls within two "exceptions" and one "suspension" established by 18 United States Code sections 1694[3] and 1696[4] and 39 Code of Federal Regulations section 320.4.[5] Accordingly, the PERB again found that the University's regulation prohibiting employee organization access to its internal mail

---

[3] 18 United States Code section 1694 provides in pertinent part: "Whoever, having charge or control of any conveyance operating by land, air or water, which regularly performs trips at stated periods on any post route, or from one place to another between which the mail is regularly carried, carries, otherwise than in the mail, any letters or packets, except such as relate to . . . current business of the carrier . . . shall, except as otherwise provided by law, be fined not more than $50." (See also, 39 C.F.R. § 310.3(b).)

[4] 18 United States Code section 1696 provides in pertinent part: "(a) Whoever establishes any private express for the conveyance of letters or packets, or in any manner causes or provides for the conveyance of the same by regular trips or at stated periods over any post route which is or may be established by law, . . . shall be fined not more than $500 or imprisoned not more than six months, or both . . . . (c) This chapter shall not prohibit the conveyance or transmission of letters or packets by private hands without compensation, . . ." (See also, 39 C.F.R. § 310.3(c).)

[5] 39 Code of Federal Regulations section 320.4 provides: "The operation of 39 U.S.C. 602(a)(1) through (6) and § 310.2(b)(1) through (6) of this chapter is suspended on all post routes *to permit colleges and universities to carry in their internal mail systems the letters of their bona fide student or faculty organizations to campus destinations.* This suspension does not cover the letters of faculty members, students, or organizations other than *bona fide* student or faculty organizations of the carrying college or university. Colleges and universities choosing to provide their student or faculty organizations access to their internal mail systems are responsible for assuring that only letters of *bona fide* student or faculty organizations addressed to campus destinations are carried. (See § 310.4.) For purposes of this suspension, 'internal mail systems' are those which carry letters on, between, and among the various campuses of a single college or university and which operate in accordance with the *Letters of the carrier* exception in 39 CFR 310.3(b)." (Italics in the original.)

system is unreasonable within the meaning of Government Code section 3568 and ordered that the University grant the union access to the University's internal mail service.

*Discussion*

■ Preliminarily, we note that under Government Code section 3564, subdivision (c) the "findings of the board with respect to questions of fact, including ultimate facts, if supported by substantial evidence on the record considered as a whole, are conclusive." In addition, the rule is that "[u]nder established principles, PERB's construction is to be regarded with deference by a court performing the judicial functions of statutory construction, and will generally be followed unless it is clearly erroneous." (*San Mateo City School Dist.* v. *Public Employment Relations Bd.* (1983) 33 Cal.3d 850, 856 [191 Cal.Rptr. 800, 663 P.2d 523]; *Regents of the University of California* v. *Public Employment Relations Bd.* (1986) 177 Cal.App.3d 648, 653 [223 Cal.Rptr. 127].)

We need not address each of the three regulations upon which the PERB based its order. ■ For the reasons stated below we are satisfied that the union's use of the University's internal mail system falls within the so-called "letters-of-the-carrier" exception as set forth in 18 United States Code section 1694 and 39 Code of Federal Regulations section 310.3(b), and that no conflict exists between the HEERA and federal postal regulations.

■ As the PERB recognized, Article I, section 8, clause 7 of the United States Constitution authorizes Congress to establish "post offices and post roads." This provision of the Constitution has traditionally been construed as granting the federal government a monopoly over the delivery of mail. (*Associated Third Class Mail Users* v. *U.S. Postal Serv.* (D.C. Cir. 1979) 600 F.2d 824; *National Ass'n of Letter Car.* v. *Independent Postal Sys.* (10th Cir. 1972) 470 F.2d 265; *Ex Parte Jackson* (1878) 96 U.S. 727 [24 L.Ed. 877].) The Private Express Statutes (39 U.S.C. §§ 601-606; 18 U.S.C. §§ 1693-1699, 1724) generally prohibit the delivery of letters along post routes by anyone other than the U.S.P.S., but establish certain statutory exceptions to the U.S.P.S.'s monopoly over the delivery of letters. Pursuant to these statutes, the U.S.P.S. has developed rules permitting private carriage of letters by individuals and entities. (39 C.F.R. §§ 310, 320.)

■ The letters-of-the-carrier exception to the general prohibition regarding delivery of mail by non-U.S.P.S. persons is contained in 18 United

States Code section 1694.[6] U.S.P.S.'s implementing regulation of the letters-of-the-carrier exception, 39 Code of Federal Regulations section 310.3(b)[7], permits a person or entity to deliver its own letters to another address or to pick up letters addressed to it from another person or entity. Where the carrier is an institution rather than an individual, letters addressed to its employees must concern the "current business" of that institution; the exception does not permit an employer to carry personal letters addressed to its employees. Thus, there are two prerequisites for application of the letters-of-the-carrier exception: (1) the letter must be addressed to or sent from an individual in his or her capacity as an employee of the institution; and (2) the content of the letter must relate to the "current business" of the institution.

Clearly, union letters to the University's custodial employees meet the first requirement. In its advisory letter to the University, the U.S.P.S. stated: "The [l]etters of the carrier exception permits an employer to deliver his own letters on his own current business by means of his own employees. Under this exception, an employee of the University who meets the qualifications set out in § 310.3(b)(2) may carry without payment of postage letters sent by *or addressed to members of the staff* or faculty in their official capacity as representatives of the employer University. It is this exception which permits the University's current use of an internal distribution system for mail pertaining *to its business which is sent to and from locations within the University.*" (Italics supplied.) The more difficult question is whether the communications from the union to University employees relates to the current business of the University.

---

[6]See footnote 3, *ante*.

[7]39 Code of Federal Regulations 310.3(b) states: "(1) The sending or carrying of letters is permissible if they are sent by or addressed to the person carrying them. If the individual actually carrying the letters is not the person sending the letters or to whom the letters are addressed, then such individual must be an officer or employee of such person (see § 310.3(b)(2)) and the letters must relate to the current business of such person.

"(2) The fact that the individual actually carrying the letters may be an officer or employee of the person sending the letters or to whom the letters are addressed for certain purposes does not necessarily mean that he is an officer or employee for purposes of this exception. The following factors bear on qualifications for the exception: the carrying employee is employed for a substantial time, if not fulltime (letters must not be privately carried by casual employees); the carrying employee carries no matter for other senders; the carrying employee is a regular salaried employee and shares in all privileges enjoyed by other regular employees (including employees not engaged primarily by the letter carrying function), including but not limited to salary, annual vacation time, absence allowed for illness, health benefits, workmen's compensation insurance, and retirement benefits.

"(3) Separately incorporated carriers are separate entities for purposes of this exception, regardless of any subsidiary, ownership, or leasing arrangement. When, however, two concerns jointly operate an enterprise with joint employees and share directly in its revenues and expenses, either of the concerns may carry the letters of the joint enterprise."

In enacting the HEERA, the California Legislature explicitly stated its findings and intent. Government Code section 3560, subdivision (a) expresses the finding that "[t]he people of the State of California have a fundamental interest in the development of harmonious and cooperative labor relations between the public institutions of higher education and their employees." Thereafter, subdivision (d) of the same section states that "[t]he people and the aforementioned higher education employers each have a fundamental interest in the preservation and promotion of the responsibilities granted by the people of the State of California. Harmonious relations between each higher education employer and its employees are necessary to that endeavor." Finally, subdivision (e) of the statute declares: "It is the purpose of this chapter to provide the means by which relations between each higher education employer and its employees may assure that the responsibilities and authorities granted to the separate institutions under the Constitution and by statute are carried out in an atmosphere which permits the fullest participation by employees in the determination of conditions of employment which affect them. It is the intent of this chapter to accomplish this purpose by providing a uniform basis for recognizing the right of the employees of these systems to full freedom of association, self-organization, and designation of representatives of their own choosing for the purpose of representation in their employment relationships with their employers and to select one of such organizations as their exclusive representative for the purpose of meeting and conferring." Unmistakably, the intent of the statute is to make collective bargaining a part of the "current business" of the University.

Although no case has so construed the intent of Government Code section 3560, we find strong support for our view from the United States Supreme Court. In *United States* v. *Erie Railroad* (1915) 235 U.S. 513 [59 L.Ed. 335, 35 S.Ct. 193], the high court held that the letters-of-the-carrier exception applied to the carriage of letters for a telegraph company by a railroad pursuant to an agreement between the companies. Under the agreement the railroad company leased to the telegraph company the right to operate telegraph lines which previously had been operated by the railroad. The railroad was given 25 percent of the cash receipts and joint supervision and control of a superintendent of telegraph who was paid by both companies. While the U.S.P.S. maintains in its amicus brief that the *Erie* decision was based on the assumption that the telegraph operations was a joint enterprise, the language of the opinion indicates otherwise. In explaining its decision, the court stated, "[W]hile the companies in many respects are independent, they are also, in some respects, at least, dependent . . . . [W]hile it may be said that there is a railroad business in which the telegraph company has no concern, that is, business distinctly railroad, yet it is also so far concerned

with the telegraph business as to make its efficient and successful operation of interest to it." (*Id.*, at p. 520 [59 L.Ed. at p. 341].) Given the intent expressed in Government Code section 3560, we find the above-quoted reasoning equally applicable to the case at bench.

More recently, in *Perry Ed. Assn.* v. *Perry Local Educators' Assn.* (1983) 460 U.S. 37 [74 L.Ed.2d 794, 103 S.Ct. 948], the United States Supreme Court had occasion to consider a question concerning union access to the internal mail system of the Perry Township schools. In that case, a collective-bargaining agreement with the board of education provided that the Perry Education Association, but no other union, would have access to the inter-school mail system. The issue presented to the Supreme Court was whether the denial of similar access to a rival teacher union violated the First and Fourteenth Amendments. Although the court was not concerned with the same issue as is presently before this court[8], it expressed the following pertinent view on labor-management relations: "The very concept of the labor-management relationship requires that the representative union be free to express its independent view on matters within the scope of its representational duties. The lack of an employer endorsement does not mean that the communications do not pertain to the 'official business' of the organization." (*Id.*, at p. 51, fn. 10 [74 L.Ed.2d at p. 808].)

We discern no meaningful distinction between the United States Supreme Court's designation of "official business" and the postal statutes' designation of "current business" of an organization. The fact that the University is free to disseminate its own views on labor-management relations through internal carriage of the University's employee newspaper would appear to mandate equal access to employees by an employee organization in an arguably adversarial position. Accordingly, we find that the union's use of the University's internal mail system to communicate with University employees falls within the letters-of-the-carrier exception and there is no conflict with federal regulations.

Although the U.S.P.S. presumably will sustain a slight loss of mail revenue as a consequence, we do not believe, as the University asserted at oral argument, that our determination will somehow expose the University's

---

[8]In *Perry*, the U.S.P.S. submitted an amicus curiae brief suggesting that the interschool delivery of material to teachers at various schools in the district might violate the same Private Express Statutes with which we are concerned in the present action. However, the U.S.P.S. acknowledged that the facts in *Perry* did not directly bear on the issue. Accordingly, the Supreme Court expressed no opinion on the potential conflict. (See, *Perry Ed. Assn.* v. *Perry Local Educators' Assn.* (1983) 460 U.S. 37, 39, fn. 1 [74 L.Ed.2d 794, 801].)

internal mail system to a deluge of other communications possessing but a peripheral relationship to University business.[9] ▆▆ We only hold that where, as here, the state Legislature has clearly emphasized the public interest in developing harmonious labor relations between the University and its employees, the internal mail system may be used by the interested parties for purposes of relevant communications.

The PERB order is affirmed.

Newsom, J., and Holmdahl, J., concurred.

Petitioner's application for review by the Supreme Court was denied September 10, 1986. Lucas, J., was of the opinion that the application should be granted.

---

[9]While such matters as the University's investments in South Africa may conceivably be considered a part of University business, full participation in the decision-making process concerning such subjects is not mandated by statute.