[No. A045723. First Dist., Div. Two. May 16, 1990.]

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,
Petitioner, v.
PUBLIC EMPLOYMENT RELATIONS BOARD, Respondent;
UNIVERSITY COUNCIL, AFT, LOCAL 2034 et al., Real Parties in
Interest.

348

9

## COUNSEL

James E. Holst, James N. Odle and Susan M. Thomas for Petitioner.

Christine A. Bologna and Donn Ginoza for Respondent.

Robert S. Gerstein for Real Parties in Interest.

## OPINION

**SMITH, J.**—In this original writ proceeding brought by the Regents of the University of California (hereafter, University), we review an order of the Public Employment Relations Board (PERB or Board) finding that the University commits an unlawful labor practice by refusing to deliver mail

through its internal mail system for real parties in interest, which are several locals of University Council, AFT, a labor union (collectively referred to here as the Union). We will conclude that the finding is not supported by substantial evidence and that the decision must be set aside.

## I. BACKGROUND

### A. *Introduction*

Government Code section 3568, part of the Higher Education Employer-Employee Relations Act (HEERA), grants organizations of University employees the right, subject to reasonable regulations, "to use institutional bulletin boards, mailboxes and other means of communication . . . ." Section 3571, subdivision (b), makes it an unlawful employer practice for the University to "[d]eny to employee organizations rights guaranteed to them by this chapter." The University operates an internal mail system by which it delivers mail between its various campuses, departments, and offices. The Union contends that this system is among the "other means of communication" to which it is entitled to access in order to communicate with present and prospective members.

The University has adopted a policy of refusing all employee organizations access to the internal mail system. It justifies this policy primarily on the grounds that delivery of unstamped union mail would infringe the monopoly granted to the United States Postal Service by federal law—specifically, by the Private Express Statutes (18 U.S.C. §§ 1693-1699, 1724; 39 U.S.C. §§ 601-606) and associated regulations (39 C.F.R. §§ 310, 320), which generally prohibit the private conveyance of "letters or packets" over "any post route." (18 U.S.C. § 1696 (a).) The University also contends that its refusal to carry unstamped union mail is a "reasonable regulation" under Government Code section 3568 in light of the burdens entailed in such carriage.

The Board found that the University's blanket refusal to deliver union mail was an unlawful employer practice under section 3571. In doing so, it relied heavily on two earlier decisions in another proceeding in which it had ordered the University to deliver unstamped union mail. Both of those decisions had been set aside, the first by Division One of this court and the second under mandate of the United States Supreme Court. The University contends that the Board's reliance on those decisions is unjustified and that the finding of an unlawful practice here is not supported by substantial evidence. The question presented is whether these objections have merit. We will conclude that they do.

## B. *Wilson I*

Twice before, an order by PERB directing the University to deliver unstamped union mail has come before the courts. The first such order was reviewed by Division One of this court in *Regents of the University of California v. Public Employment Relations Bd.* (1983) 139 Cal.App.3d 1037 [189 Cal.Rptr. 298] (*Wilson I*). In that order, PERB had expressly refused to consider the effect of federal law on the University's obligations under HEERA with respect to unstamped union mail. This disregard of federal law was apparently predicated on a clause of the California Constitution providing that an administrative agency "has no power . . . to refuse to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a determination that the enforcement of such statute is prohibited by federal law or federal regulations." (Cal. Const., art. III, § 3.5, subd. (c).)

Division One reversed PERB's decision without reaching the issue whether HEERA conflicted with, and was thus preempted by, federal law. The court noted that the right of access granted by HEERA was subject to "reasonable regulations." (139 Cal.App.3d at p. 1042, quoting Gov. Code, § 3568.) The state Constitution did not prohibit PERB from considering the effect of federal law in determining whether the University's denial of access was "reasonable." (*Ibid.*) The matter was therefore remanded so that PERB could decide whether the circumstances, including federal law, warranted the University's refusal to deliver unstamped union mail. (*Ibid.*)

## C. *Wilson II*

On remand from *Wilson I,* an administrative law judge (ALJ) for PERB conducted hearings on several issues concerning the reasonableness of the University's regulations. Some evidence taken apparently bore on the questions whether the internal mail routes crossed federal postal routes and whether the materials sought to be delivered were "letters" for purposes of the Private Express Statutes.[1] The ALJ's findings on those points were equivocal, however (see section V, *post*), and the Board resolved the federal law issue on broader grounds. It concluded that the delivery of union communications was entirely excepted from the postal monopoly because it came within the "letters of the carrier" exception (18 U.S.C. § 1694), the "private hands without compensation" exception (18 U.S.C. § 1696 (c)),

---

[1] The parties seem to have assumed at all times that to be subject to the federal monopoly, a delivery must cross postal routes and must involve a "letter." We have no occasion to question this assumption here. (See 18 U.S.C. § 1696 (a).)

and the regulatory "suspension" for *"bona fide* student or faculty organizations" (39 C.F.R. § 320.4).

PERB again ordered the University to deliver union mail, and the matter again came before Division One in *Regents of University of California* v. *Public Employment Relations Bd.* (1986) 182 Cal.App.3d 71 [227 Cal.Rptr. 57] (*Wilson II*). The court affirmed PERB's order, holding that the delivery of union mail came within the "letters of the carrier" exception and thus there was "no conflict with federal regulations." (182 Cal.App.3d at p. 80.) The University's petition for review by the California Supreme Court was denied. (182 Cal.App.3d at p. 81.)

The University then appealed to the United States Supreme Court, contending that PERB and the Court of Appeal had misapplied federal law. The Supreme Court agreed and reversed the decision of the Court of Appeal. (*Regents of Univ. of Cal.* v. *Public Empl. Rel. Bd.* (1988) 485 U.S. 589 [99 L.Ed.2d 664, 108 S.Ct. 1404].) It held that neither the "letters of the carrier" nor the "private hands without compensation" exception applied to the University's delivery of union mail. (485 U.S. at pp. 591, 601 [99 L.Ed.2d at pp. 669, 676].) It did not address the third ground of exemption on which PERB had relied—the regulatory suspension for letters of "bona fide student or faculty organizations"—noting that PERB "expressly declined to press it before this Court." (*Id.* at p. 593, fn. 1 [99 L.Ed.2d at pp. 670-671])

Upon receipt of the Supreme Court's mandate, Division One issued an order directing that its judgment be "vacated and that a new judgment consistent with the United States Supreme Court decision be entered. Accordingly, the order of the Public Employment Relations Board is reversed. (Order dated Jul. 1, 1988, in A029706; see 248 Cal.Rptr. 815, 816.)"[2] This, so far as the record shows, terminated the *Wilson* matter.

D. *The Proceedings Here*

This proceeding was instituted in 1981. The initial charge was brought by University Council, AFT, Local 2034, alleging that the University, at its San Diego campus, had "failed and refused to grant to the Charging Party access to the internal University mail system as is required by [HEERA]." The charge identified no specific items of mail which the Union sought to have delivered or which the University had refused to deliver. In its answer,

---

[2] Both parties have offered or relied upon portions of the file in *Wilson II.* We take judicial notice of this court's own file in that matter pursuant to Evidence Code section 459.

the University alleged among other things that the charge was not sufficiently specific, that the University was prohibited by law from competing with the United States Postal Service, and that the charge failed to set forth facts indicating that the University's refusal was unreasonable.

The Union amended the charge to add eight more union locals as charging parties and to allege that the denial of access was system-wide. However, it still identified no specific items of mail sought to be delivered, or instances where access had been denied. In 1982, the Union filed a particularization, but the only item specifically identified as to which delivery was sought was the Union's newspaper. The Union asserted that if it could distribute the newspaper without paying postage it would realize a savings of $2,000 to $3,000 per year, which could then be devoted to expanded publication or distribution. It asserted that it had notified the University of its desire to use the internal mail system and that University representatives at each campus had indicated that the system was not available to employee organizations. In its answer to the amended charge, the University admitted the denial of access but again alleged (among other things) that it was prohibited from competing with the postal service and that its conduct was reasonable.

The Union filed a motion for partial summary judgment identifying the "central issue" as, "Must the Regents provide access to its internal mail system to the AFT?" It asserted that "the fundamental issue in this case is identical to that in *Wilson.*" It dismissed the University's concerns about federal law by quoting PERB's statement in *Wilson* that any conflict between HEERA and federal law "is a matter for a different tribunal, and not resolvable in an unfair practice charge brought under HEERA."

In opposition to the summary judgment motion, the University asserted that its internal mail system operated "under a narrow exception to the Private Express Statutes pursuant to regulations issued by the United States Postal Service." "Use by other individuals or organizations," it asserted, "renders the internal mail system competitive with the U. S. Postal Service; that is forbidden by law." It noted that postal regulations expressly obligated it to "desist from carrying any matter when the form of shipment, identity of sender or recipient, or any other information reasonably accessible to [it] indicates that matter tendered to [it] for carriage is not proper under these regulations." (Quoting 39 C.F.R. § 310.4.) It thus contended that its ban on access was "required by federal law." It further contended that the ban "must be deemed reasonable within the meaning of section 3568 of HEERA."

In July 1982, the ALJ issued a proposed decision granting the Union's motion for partial summary judgment. He identified the "sole issue" before him as "whether it is a violation of sections 3571, subdivisions (a) and (b) for the University to refuse to allow the Charging Party to send mail through the University mail system without first paying U.S. postage." He stated that this issue had been "fully litigated" in the *Wilson* matter. He dismissed the University's defenses, including its reliance on federal law, by noting that "[these] same arguments were . . . before the Board in [*Wilson*], and the Board found violations of sections 3571(a) and (b). . . . No stay has been issued in that case . . . and administrative law judges for the PERB are bound by the earlier Board decision." He found that "for the reasons stated in [*Wilson*], the University has violated sections 3571(a) and (b) by denying Charging Party access to the University's mail system for unstamped mail."

Seven months after the ALJ issued this ruling, Division One rendered its decision in *Wilson I* reversing the PERB decision on which the ALJ had relied. Thereafter, by a series of stipulations and orders, this matter was held in abeyance pending further proceedings in *Wilson*. In August 1988, after the Supreme Court reversed the decision in *Wilson II,* the University filed exceptions to the ALJ's proposed decision, stating that it was "premised upon the binding effect of [the Board's decision in *Wilson*], which was overturned by the U. S. Supreme Court. . . ." The Union replied only that the Supreme Court's decision was "specific to the facts of that case" and that the facts of this case were "readily distinguishable."

In March 1989, the Board rendered its decision here. It rejected the suggestion that *Wilson* could be distinguished on its facts, concluding that the Supreme Court's decision "is equally applicable to the present case." However, it read the decision as involving only the issue of "the effect of the Private Express Statutes on the right of access to internal mail systems granted under HEERA." Therefore, the Board opined, its own second decision in *Wilson* "remains as established precedent under HEERA, with the exception of its holding concerning the effect of the Private Express Statutes. Accordingly, access to the University's internal mail system must still be afforded to those unstamped union mailings which fall outside the scope of the postal monopoly, subject, of course, to any other limitations arising under HEERA section 3568." On this basis, the Board "affirm[ed] the ALJ's proposed decision finding that the University unlawfully denied [the Union] access to its internal mail system, however, such access must be in compliance with the Private Express Statutes and applicable postal regulations."

The University brought this proceeding for a writ of review under Government Code section 3564, contending that (1) the Board's decision is not supported by substantial evidence; and (2) the decision grants relief not prayed for by the Union and decides an issue not presented, thereby depriving the University of notice and an opportunity to be heard, all in violation of its right to due process. Because we find merit in the first objection, we will not reach the due process issue.

## II. ANALYTICAL OVERVIEW

The dispositive question is whether there is an adequate basis in this record for the Board's finding that the University's refusal to deliver unstamped union mail is a violation of HEERA.

At the threshold we are constrained to observe that the factual, legal, and logical grounds for the decision are poorly articulated at best. Indeed the Board's opinion is virtually opaque—a patchwork of seemingly unconnected considerations somehow culminating in a finding that the University is guilty of an unlawful practice. This has unnecessarily magnified the difficulty of our task. ■ "[T]he orderly functioning of judicial review requires that the grounds upon which an administrative agency proceeded be clearly disclosed and adequately supported." (*Medlock Dusters, Inc.* v. *Dooley* (1982) 129 Cal.App.3d 496, 502 [181 Cal.Rptr. 80], citing *Topanga Assn. for a Scenic Community* v. *County of Los Angeles* (1974) 11 Cal.3d 506, 515-517 [113 Cal.Rptr. 836, 522 P.2d 12].) " 'We must know what [an administrative] decision means, before the duty becomes ours to say whether it is right or wrong.' " (*Id.* at p. 503, quoting *United States* v. *Chicago, Milwaukee, St. Paul & Pacific Railroad Co.* (1934) 294 U.S. 499, 511 [79 L.Ed. 1023, 1032, 55 S.Ct. 462].)

From a review of the entire controversy it appears that the Board reasons as follows: (1) the Supreme Court in *Wilson* only decided issues of federal law; (2) the Board's decision in that case retains force on issues of state law, including the issue whether the University's blanket refusal to deliver union materials violates HEERA; (3) despite the Supreme Court's ruling in *Wilson,* there are, or may be, situations in which the University can deliver material for the unions without violating federal law; (4) the University's blanket refusal to deliver any material for the unions therefore violates HEERA.

As will appear, this reasoning in light of the present record is inadequate to support the order under review. There is not substantial evidence in this record that situations actually exist in which the University can deliver

union mail without violating federal law. To the extent HEERA might be construed to require the University to violate federal law, it is obviously preempted. Without evidence of deliveries which can be lawfully made, it cannot be said that the University is under any obligation to provide access to its internal mail system. Moreover, if there is mail which can be delivered without violating federal law, HEERA grants only such access as is consistent with reasonable regulations. The reasonableness of the University's refusal to deliver such mail depends on an assessment of the burdens and benefits entailed in such delivery. Without concrete evidence of the nature of the contemplated deliveries, those burdens and benefits cannot be assessed. There is no such evidence here. Nor can the Board's earlier rulings in *Wilson* supply this lack. Having been set aside, they are a legal nullity; and even if they could be relied upon for persuasive force they have been logically invalidated by the judicial decisions reversing them. To make a new order requiring the delivery of union mail, the Board must have before it concrete evidence that the deliveries are permitted by federal law and that it is unreasonable to refuse them.

### III. Reliance on Rulings in Wilson

In several crucial respects, the decision before us rests on rulings in the *Wilson* matter. First, the decision affirms "in part" an order which is *entirely* predicated on the Board's first decision in *Wilson*; in granting summary judgment the ALJ merely noted the identity of the issues and the fact that the Board had rejected the University's arguments. Second, the decision expressly asserts that except on the subject of the Private Express Statutes, the Board's decision in *Wilson* continues to operate as "established precedent." Likewise, in its brief here the Board states that it properly upheld "those findings set forth in its prior *Wilson* determinations that were not disturbed on appeal." Third, in support of the premise that some intended deliveries may not cross federal postal routes or may not involve "letters," the Board cites findings made by the ALJ in *Wilson*.

We can find no basis for continued reliance on the Board's decisions in *Wilson*. Certainly it is not warranted as a matter of res judicata or collateral estoppel. Those doctrines concern the binding effect of a *final judgment*. (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 211, pp. 648-649 et seq.) Neither of the Board's *Wilson* decisions ever became final. The first was reversed with directions and then superseded by the second, which in turn was unqualifiedly reversed under mandate of the Supreme Court. "The effect of an unqualified reversal ('The judgment is reversed') is to *vacate* the judgment, and to leave the case 'at large' for further proceedings as if it had never been tried, and as if no judgment had ever

been rendered." (9 Witkin, *op. cit. supra*, Appeal, § 625, p. 606; see 2 Cal.Jur.3d (1973) Administrative Law, § 341, pp. 637-638 [effect of judicial decree annulling administrative adjudication is "to set the matter at large for further proceedings not inconsistent with the court's judgment"].)

The Board cites *British Auto Parts, Inc.* v. *N. L. R. B.* (9th Cir. 1968) 405 F.2d 1182, certiorari denied (1969) 394 U.S. 1012 [23 L.Ed.2d 39, 89 S.Ct. 1625], apparently to establish that PERB decisions may operate as precedent under the doctrine of stare decisis. Assuming that is so, we fail to see what precedential value the Board's rulings in *Wilson* can possess after they were repudiated on review. Certainly they were superseded insofar as they addressed issues of federal law. (See *Price* v. *Civil Service Com.* (1980) 26 Cal.3d 257, 278, fn. 14 [161 Cal.Rptr. 475, 604 P.2d 1365], cert. dism. 449 U.S. 811 [66 L.Ed.2d 13, 101 S.Ct. 57].) The Board apparently concedes this elementary point. Yet it seems to contend that its *Wilson* decisions resolved independent issues of state law which support the decision here. This contention is insupportable.

In *Wilson I,* Division One held that the federal issue was an integral part of the HEERA analysis. (139 Cal.App.3d at p. 1042.) The only issue of state law before the Board in *Wilson* was whether the University's denial of access was reasonable under HEERA *given the Board's conclusion that federal law posed no impediment to delivery of union mail.* The Board did not and could not address the situation presented here, where the Supreme Court has effectively declared that federal law does indeed pose a general impediment to the delivery of union mail. ■ A decision is not authority on an issue not presented in it. (9 Witkin, *op. cit. supra*, Appeal, § 783, pp. 753-755.) ■ The Board's decisions in *Wilson* have little if any bearing as precedent on the issues in this case.

The Board suggests that its reliance on rulings in *Wilson* is warranted by the doctrine of "law of the case." Again the cited doctrine is wholly inapplicable. For one thing, it operates only "in [a] subsequent retrial or appeal *in the same case.*" (9 Witkin, *op. cit. supra*, Appeal, § 737, p. 705.) In no apparent sense is this "the same case" as *Wilson.*

The Board's reliance on *Wilson* seems illogical as well as procedurally unwarranted. The summary judgment order which PERB purported to affirm here was based *entirely* on PERB's own initial analysis in *Wilson,* which in turn rested on the supposition that federal law was entirely irrelevant to the Board's inquiry. *Wilson I* repudiated that supposition and, with it, the entire analysis on which the summary judgment here rested. The fact that PERB reached the same result in its second *Wilson* decision can hardly

save the order here when that decision too was held to rest on an erroneous premise, i.e., the supposed blanket exemption of union mail from the Private Express Statutes. In other words, the judicial reversal of the Board's decisions in *Wilson* completely destroyed the analytical basis for the summary judgment order here. We fail to see how, without finding some new basis for reaching the same result, the Board could affirm any part of that order.

In sum, we find no basis for the Board's pervasive reliance on the proceedings in *Wilson,* and we conclude that on this record the Board should have sustained the University's exception to the proposed decision granting summary judgment.

## IV. PREEMPTION OF HEERA BY FEDERAL LAW

The Board's finding that the University has committed an unlawful labor practice necessarily rests on a conclusion that the University has breached an obligation under HEERA to deliver union mail. Since the blanket exemptions from federal law on which the Board previously relied have been conclusively held not to apply, any requested delivery will violate federal law unless there appears some other basis for holding federal law inapplicable.

It should hardly need stating that HEERA cannot obligate the University to make deliveries which violate federal law.[3] To the extent that a state law conflicts with a valid federal one it is superseded and unenforceable. The laws of the United States are "the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or laws of any State to the Contrary notwithstanding." (U.S. Const., art. VI, § 2.) Thus a state law that is incompatible with federal law cannot be enforced. (*O'Reilly* v. *Board of Medical Examiners* (1967) 66 Cal.2d 381, 385 [58 Cal.Rptr. 7, 426 P.2d 167], cert. den. (1968) 390 U.S. 944 [19 L.Ed.2d 1132, 88 S.Ct. 1019].) "Federal regulation obviously supersedes state regulation where compliance with both is a literal impossibility." (Tribe, American Constitutional Law (1988) § 6-26, p. 481.)

---

[3] Indeed the point is virtually self-evident and would hardly warrant discussion except for three facts: First, the California Constitution prohibits an administrative agency such as PERB from denying enforcement of a state law on grounds of federal preemption unless a court has declared that the law is preempted. (Cal. Const., art. III, § 3.5, subd. (c).) Second, despite the rich history of the current dispute no court has explicitly said that HEERA is preempted by federal law to the extent of any conflict. Third, the absence of a judicial holding to this effect may have contributed to the considerable perplexity which seems to surround the current controversy. Accordingly, we address the issue in an attempt to reduce any lingering confusion.

There is no suggestion that the Private Express Statutes and associated regulations are invalid. They have been held to represent valid exercises of the postal power expressly granted to Congress (see U.S. Const., art. I, § 8 cls. (7), (18)), and they have survived constitutional challenge. (See *United States Postal Serv.* v. *Brennan* (2d Cir. 1978) 574 F.2d 712, cert. den. (1979) 439 U.S. 1115.) It follows that the obligations HEERA imposes on the University can extend only so far as it does not require the violation of federal law. To the extent HEERA would otherwise obligate the University to make a delivery which is prohibited by federal law, HEERA is superseded and no such obligation can arise.

### V.   MAILINGS NOT SUBJECT TO POSTAL MONOPOLY

█  As appears from the foregoing discussion, HEERA can impose an obligation on the University to deliver an item of union mail only if the contemplated delivery falls outside the federal postal monopoly. The Board found here that HEERA imposes some obligation to deliver union mail. For such an obligation to exist, there must in fact be deliveries which fall outside the federal prohibition. The Board's decision contains no express finding that such deliveries have been requested or contemplated. Nor do we find substantial evidence in this record to support such a finding.

In a footnote in its brief here, the Board enumerates the ways in which a union mailing might fall outside the postal monopoly: "First, it may be comprehended within an exception to the Private Express Statutes . . . . Secondly, postal routes may not be crossed by the attempted access . . . . Finally, the particular mailing may not constitute a 'letter' as that term is defined in the postal regulations."[4]

The record before us contains no evidence of any union-initiated mailing ever requested (or contemplated) which has fallen (or would fall) within any of the enumerated categories. Indeed, as the quoted language indicates, the Board asserts no more than a *possibility* that some materials "may" be deliverable under federal law. A finding must rest on more than a hypothesis. A conditional premise is not a fact, and a mere possibility is not substantial evidence. Before the University can be found to have breached a legal obligation to deliver mail, it must appear that there is mail of a type which the University can be required to deliver. The record fails to establish that

---

[4]From the brief and from counsel's remarks at oral argument, it appears the Board has abandoned any reliance on express exceptions in the federal statutes and regulations. Thus the only materials at issue are those whose delivery would not cross postal routes and those not deemed "letters."

there ever has been or will be mail falling within any of the categories identified by the Board.

The Board seems to insist that no proof on this subject is needed, and that the University is somehow estopped to demand such proof. We fail to detect any basis for this suggestion. The only issue tried here was whether the University had a *general* obligation to deliver union mail. The pleadings made no reference to any of the grounds of exception noted by the Board, and there is no indication that they were specifically tried. Indeed, in a letter anticipating the Union's motion for summary judgment, its attorney said the issue was "denial of access *generally* to the internal mail system." (Italics added.) Nor is there any indication that the points on which the Board now relies were litigated to any conclusion in *Wilson*. The Board there concluded that union mail came within three exceptions to the Private Express Statutes. Had that conclusion been upheld it would have exempted all union mail from the postal monopoly. This rendered moot the narrower issues of route overlap and the possibility that some union mailings might not be "letters." We fail to see why the University should be deemed to have waived its right to demand evidence to support the Board's latter-day findings on these issues.

The Board points to certain preliminary findings by the ALJ in the *Wilson* case. But as we noted above, the Board's decisions there are legal nullities which bind no one. Moreover, even if the findings retained some force, they are too ambiguous and equivocal to establish that there is in fact union mail which the University may deliver without violating federal law. In the case of the "overlap" issue, the ALJ wrote that "[t]he University and U.S. postal service pick up and deliver to 50 identical locations creating *virtually complete overlaps of routes* used. Although the University services an additional 100 locations, the routes used also *substantially overlap* U. S. postal routes." (Italics added.)[5]

Similarly, on the issue whether the Union might seek to send something other than "letters," the ALJ found that "there *may* be occasions where the charging party's materials fall within an exception to the definition of letters," but "the majority of the mailings would be addressed to individual employees and would therefore be considered letters within the postal regu-

---

[5] We are advised by letter of a recent decision in which the Board apparently ordered the University to deliver materials for certain employee organizations at the Lawrence Livermore National Laboratory. The parties' discussion suggests that the Laboratory presents the primary (perhaps the only) location where the internal mail system does not overlap postal routes. In any event, the adequacy of the record in that case to support the decision made there is not an issue we can or should address here.

lations." (Italics added.) This "finding" establishes no more than a theoretical possibility that the union involved in *Wilson* might seek to send materials which do not constitute letters.[6]

Moreover, it does not appear that either finding played any role in the Board's decisions in *Wilson.* Instead the Board concluded, erroneously, that federal law posed no impediment whatever to the delivery of union mail. A series of hypothetical and ambiguous findings reached at a preliminary stage of a superseded proceeding is not substantial evidence supporting a finding that the narrow grounds of exception relied on by the Board here exist in fact. There is no such evidence on this record, and thus there is no substantial basis for the Board's finding that the University has breached an obligation imposed on it by HEERA.

## VI. REASONABLE REGULATIONS

■ The failure to establish that there are in fact union mailings which the University could deliver without infringing the federal postal monopoly is fatal to the Board's decision for another reason: HEERA explicitly entitles the University to condition employee access on reasonable regulations, and the reasonableness of its denial of access cannot be determined without concrete evidence of what such access entails. To assess the reasonableness of a particular regulation, the Board must balance, in light of applicable public policies, the benefits conferred by the regulation and the burdens it imposes. Without some identification of the materials and circumstances involved in a contemplated delivery, it is impossible to weigh either the benefits or the burdens arising from delivery.

The Board's discussion of the reasonableness issue again rests on its decision in *Wilson* where, as the present decision states, the Board found "merely speculative" the University's claims of undue burden. "There is no reason to find otherwise here," the present decision continues, "especially in light of the severe restrictions on access that were mandated by the U. S. Supreme Court . . . ."

This reasoning is seriously flawed. First, the absence of a "reason to find otherwise" is not substantial evidence. In fact there is no basis on this

---

[6] Another fatal flaw in the Board's reliance on the *Wilson* findings is the fact that the charging party there was a completely separate entity from the Union here. Even if the record showed that the union in *Wilson* sought to send something other than "letters," it would not follow that the Union here seeks to do so. The same may be said of the overlap issue: Even if it were found that the union in *Wilson* sought deliveries which would not cross postal routes, that would not establish that the Union here seeks to do so. This ready confusion of distinct factual issues is further testimony to the unacceptable degree of abstractness in the Board's reasoning here.

record to make a finding either way about the balance of benefits and burdens entailed in the contemplated limited delivery. The evidence before the Board in *Wilson* could not address this issue because it did not then exist. The Supreme Court's decision created a wholly different factual setting from that which was considered in *Wilson*.

This observation points to the second flaw in the quoted reasoning: The likelihood that fewer pieces of mail may now have to be delivered does not necessarily mean that delivery will be less onerous. The University may now be handed thousands of pieces of union mail and required to determine which of them can be lawfully delivered. Aside from the administrative burden of separating deliverable from undeliverable mail, the University runs the risk of having to defend federal enforcement actions.

Furthermore, even if it is assumed that a reduction in pieces delivered will reduce the burden on the University, it is also likely, if not virtually certain, that it will reduce the benefit to the Union. Instead of receiving free mail delivery throughout the University system, it will be entitled to delivery only in the limited circumstances where federal law allows it. There is no indication that the Union has ever sought the kind of limited delivery the Board has now ordered. It may well be that the difficulty and uncertainty of determining which mail is deliverable and which is not will outweigh any benefit the Union hopes to receive. In any event, the projected benefit to be realized by the Union must be considered in arriving at a principled determination of what constitutes a reasonable regulation.

## VII. CONCLUSION

Nothing in this opinion is intended to preclude a finding that the University is under a duty to deliver some union mail. The record before us, however, does not contain substantial evidence to support such a finding. Until there is evidence of deliveries which the University can make without violating federal law, and as to which the refusal of delivery is unreasonable, there can be no finding that the University is under a duty to make any deliveries. Since the finding of an unlawful labor practice must be predicated on the breach of such a duty, no such finding can be sustained in the absence of such evidence.

If this matter is to go forward, it must be on the basis of evidence of proffered mailings and the surrounding circumstances, sufficient to enable the Board to determine the applicability of the Private Express Statutes to such mailings and the reasonableness of requiring such deliveries as may be

found to be lawful.[7] Any further proceedings must necessarily permit the parties an opportunity to present and address new evidence on these issues.

## VIII. DISPOSITION

The decision under review is set aside, and the matter is remanded for further proceedings consistent with this opinion.

Kline, P. J., and Benson, J., concurred.

A petition for a rehearing was denied June 8, 1990.

---

[7] The parties have not addressed the question of who bears the burden of proof with respect to the factual questions presented. The Board's own regulations provide, "The charging party shall prove the complaint by a preponderance of the evidence in order to prevail." (Cal. Code Regs., tit. 8 § 32178; see § 32680.) We recognize the possibility that once a certain threshold showing is made, the burden may shift to the employer to justify its conduct. (See *Martori Brothers Distributors* v. *Agricultural Labor Relations Bd.* (1981) 29 Cal.3d 721, 730 [once antiunion motive for discharge shown, employer bears burden of showing discharge would have occurred in any event]; *William Dal Porto & Sons, Inc.* v. *Agricultural Labor Relations Bd.* (1987) 191 Cal.App.3d 1195, 1207-1212 [rebuttable presumption where employer refuses to bargain in good faith that refusal caused failure to reach agreement].) We need not attempt to anticipate the precise rule which should govern in the present situation, because the record reflects a complete dearth of evidence to support the finding of an unlawful labor practice. If the Board concludes that the situation calls for some device shifting the burden of proof, its decision should explicitly so reflect.